**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ISHANTA SHOALS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. CIV-16-220-RAW |
| (1) THE STATE OF OKLAHOMA, ex rel. | ) | |
| OKLAHOMA DEPARTMENT OF HUMAN | ) | |
| SERVICES, | ) | |
| (2) MICHAEL KINDRICK, an individual, | ) | |
| and, | ) | |
| (3) Zane Gray, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS AMENDED COMPLAINT
AND BRIEF IN SUPPORT OF DEFENDANT MICHAEL KINDRICK**

Respectfully submitted,

DEPARTMENT OF HUMAN SERVICES


*/s/ John E. Douglas*
John E. Douglas (OBA #2447)
Stacy Pedersen (OBA #17118)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816

E-mail:  John.Douglas@okdhs.org
E-mail:  Stacy.Pederson@okdhs.org
E-mail:  Emily.Fagan@okdhs.org
*Attorneys for Defendant Michael Kindrick*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES  ................................................................. ii

MOTION TO DISMISS AMENDED COMPLAINT
    AND BRIEF IN SUPPORT OF DEFENDANT MICHAEL KINDRICK  ...... 1

MOTION TO DISMISS  ......................................... 1

BRIEF IN SUPPORT OF MOTION TO DISMISS  ............................................ 1

    I. STATEMENT OF FACTS  ...................................................... 1

    II. ARGUMENT AND AUTHORITIES  ...................................... 6

        A. Standard for Motion to Dismiss for failure to state a claim.  ........ 6

        B. Plaintiff's Amended Complaint must be dismissed
           under Rule 12(b)(6) ................................... 10

        1. Count V fails to state a claim against Defendant Kindrick
           under 42 U.S.C. §1983 for violation of Plaintiff's
           First Amendment right to freedom of speech  ........................ 10

        2. The Plaintiff's allegations against Defendant Kindrick
           are conclusory and insufficient to state a claim  ...................... 16

        3. Defendant Kindrick is entitled to qualified immunity
           from liability for any §1983 claim alleged against
           him in this case ........................................................ 18

    III. CONCLUSION  ................................................................ 21

CERTIFICATE OF SERVICE  ......................................................... 23

# TABLE OF AUTHORITIES

## CASES

**Page**

*Andersen v. McCotter*, 205 F.3d 1214, 1218-1219 (10th Cir. 2000) .......... 15, 16

*Anderson v. Creighton,* 483 U.S. 635, 646, n. 6 (1987) .............................. 19

*Ashcroft v. Iqbal,* 556, U.S. 662, 664, 678-679 (2009) ................... 7, 8, 9, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547
555, 556, 557, 570, 127 S.Ct. at 1965, 1955, 1974,
167 L.Ed.2d 929 (2007) ..................................................... 6, 8, 9, 18

*Brammer-Hoelter,* 492 F.3d at 1202-03 .......................................... 11

*Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir.2008) ................................ 7

*Connick v. Myers,* 461 U.S. 138, 146-47, 103 S.Ct.
1684, 75 L.Ed.2d 708 (1983) ............................................... 11

*Couch v. Board of Trustees of Memorial Hosp. of Carbon County,*
587 F.3d 1223 (10th Cir. 2009) ............................................ 11

*Dill v. City of Edmond, Okla.,* 155 F.3d 1193, 1201 (10th Cir. 1998) .................. 11

*Garcetti v. Ceballos,* 547 U.S. 410, 417, 126 S.Ct.
1951, 164 L.Ed.2d 689 (2006) ............................................ 10, 11, 14, 15, 16, 22

*Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) .............................. 20

*Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir. 1995) .............................. 20

*Green v. Bd. Of Cnty. Comm'rs,* 472, F.3d 794, 801 (10th Cir. 2007) ............... 12

*Hannula v. City of Lakewood,* 907 F.2d 129, 130 (10th Cir. 1991) ............. 19, 20

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ................................... 18, 19, 20

*Hidahl v. Gilpin County Dept. of Social Services*,
    938 F.2d 1150, 1155 (10th Cir. 1991) ......................................................... 20

*Hilliard v. City and County of Denver*,
    930 F.2d 1516, 1518 (10th Cir. 1991) ......................................................... 20

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991) .................................................... 21

*Kansas Penn Gaming LLC v. Collins,* 656 F.3d 1210, 1214, 1215,
(10th Cir. 2011) ................................................................................................ 8

*Khalik v. United Air Lines,* 671 F.3d 1188, 1193 (10th Cir. 2012) ................... 8

*Lutz v. Weld County School Dist. No. 6,*
    784 F.2d 340, 342-43 (10th Cir. 1986) ...................................................... 20

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ........................................... 19, 20, 21

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...................................................... 19

*Pickering v. Board Of Education,* 391 U.S. 563, 568,
88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ................................... 10, 11, 14, 15, 16, 22

*Poff v. State of Oklahoma, ex rel. Okla.Dept. of Mental
Health and Substance Abuse Services,
#CIV-14-1438-C (W.D.Okla.)(Cauthron, J.)
("Memorandum Opinion and Order")* ................................................................ 11

*Powell v. Mikulecky,* 891 F.2d 1454, 1556 (10th Cir. 1989) ............................. 19

*Pueblo Neighborhood Health Centers, Inc., v. Losavio,*
    847 F.2d 642, 645 (10th Cir. 1988) .......................................................... 20

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174, 1177 (10th Cir. 2007) .............................................. 8, 9, 17

*Robbins v. State of Oklahoma, ex rel. Dept. of Human Services,*
519 F.3d 1242, 1247-1248, 1249 (10th Cir. 2008) ..................... 7, 9, 10, 17, 19

*Saucier v. Katz*, 533 U.S. 194, 201-203 (2001) ............................................. 19

*Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990) ................................. 20

*Thomas v. Roberts,* 261 F.3d 1160, 1170 (11th Cir. 2001)................................. 19

*VanZandt v. Okla. Dept. of Human Services,*
    2008 WL 1945344 *5 (10th Cir. 2008) ...................................... 18

## FEDERAL STATUTES

42 U.S.C. §1981 ................................................................. 2

42 U.S.C. §1983 ................................................. 2, 9, 10, 18, 21, 22

## FEDERAL RULES OF CIVIL PROCEDURE

F.R. Civ.P., Rule 8 ............................................................. 6

F.R. Civ.P. Rule 12(b)(6) ................................................. 1, 6, 8, 10

## OKLAHOMA STATUTES

10 A O.S. § 2-6-102 ......................................................... 15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

ISHANTA SHOALS,           )
                               )
               Plaintiff,      )
                               )
vs.                         )
                               )    Case No. 16-CV-220-RAW
(1) THE STATE OF OKLAHOMA, ex rel.  )
     OKLAHOMA DEPARTMENT OF HUMAN )
     SERVICES,                    )
(2) MICHAEL KINDRICK, an individual,   )
     and,                          )
(3) Zane Gray, an individual,        )
                               )
               Defendants.   )

**MOTION TO DISMISS AMENDED COMPLAINT**
**FOR FAILURE TO STATE A CLAIM**
**AND BRIEF IN SUPPORT OF DEFENDANT MICHAEL KINDRICK**

Comes now the Defendant, Michael Kindrick ("Kindrick"), through his undersigned attorneys and respectfully moves the Court to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Plaintiff's Amended Complaint (Doc. #3) in this case fails to state a claim upon which any relief can be granted against him.

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

**I.  STATEMENT OF FACTS**

Plaintiff's Complaint alleges violations of the Plaintiff's constitutionally protected right of free speech arising out of her employment and termination by Defendants.  In her Complaint, Plaintiff Ishanta Shoals ("Shoals") has asserted four claims against the Oklahoma Department of Human Services ("DHS") for

race discrimination and retaliation pursuant to Title VII, and pursuant to 42 U.S.C. § 1981; and one claim against two of its employees, Zane Gray and Michael Kindrick, pursuant to 42 U.S.C. § 1983, alleging violation of Plaintiff's right of free speech under the First Amendment.   The Plaintiff brings all of her claims in connection to her past employment at DHS.

As relief for her Fifth claim, Plaintiff seeks judgment in her favor against the individual Defendants awarding "an amount in excess of $100,000 plus interest, costs, attorney fees, and compensatory and punitive damages,"  a declaratory judgment determining Defendants Kindrick's and Gray's conduct to be in violation of Plaintiff's rights; enjoining the defendants from engaging in such conduct, reinstatement to her former position, or front pay, and other relief as may be just, proper and equitable.

Plaintiff alleges she became employed with the Oklahoma Department of Human Services ("DHS") on June 4, 2014, and began working on July 11, 2014 as a Child Welfare Specialist. Complaint (Doc. #3) at ¶10.  In October 2014, Plaintiff was assigned a case regarding a 5 year old child, R.S., who had arrived at school with a black eye and advised his teachers that his father caused the injury. Id., at ¶11.  Plaintiff interviewed the parents and R.S. at the residence. R.S. described that he had been hit by his father after breaking a plate.  R.S. informed Plaintiff that he was afraid of his father and feared that he would be physically assaulted for accusing his father and telling the truth. Id., at ¶13. Plaintiff contacted the on-call supervisor, Ms. Westdyke, who relayed the

2

information to the District Director, Jeff Sanders. Id., at ¶14.   Sanders and Westdyke decided there was not a safety concern and instructed Plaintiff to leave R.S. with the parents in the residence. Id., at ¶15.   The next day, Plaintiff reiterated her concerns for the safety of the child to her supervisor, Summer Purdom.  Id., at ¶16.  Purdom instructed Plaintiff to return to the residence and obtain permission to have R.S. examined by a physician. Id., at ¶ 17.  Upon arrival at the residence, R.S. advised Plaintiff that his father had beaten him, hitting him over and over again on his back, for talking to Plaitntiff the previous evening. Id., at ¶ 18. R.S. was examined by a doctor, who found that R.S. had bruises consistent with being beaten with an open hand. Id., at ¶19.  Plaintiff told Ms. Purdom of the doctor's findings.  Ms. Purdom advised Plaintiff to create an out-of-home safety plan for the child. Plaintiff then advised Defendant Kindrick of how the situation with R.S. was handled that it was wrong to leave R.S. in the home and that doing so violated DHS policy.

Later that week, Plaintiff attended a multi-discipline task force meeting regarding R.S. According to Plaintiff, members of the task force were angry that DHS had not removed R.S. on Plaintiff's initial contact. Id., at ¶22 Plaintiff's supervisor informed Plaintiff the following week that the matter was being investigated by the DHS Office of Inspector General, ("OIG"), Office of Client Advocacy ("OCA") and the Oklahoma Commission on Children and Youth ("OCCY"). Id., at ¶23.

Plaintiff alleges that on December 16, 2014, Plaintiff was called into a meeting with two CPS supervisors, Ms. Heist and Ms. Mobbs, and with Mr. Kindrick's administrative assistant, and accused of speaking rudely on the telephone to Ms. Mobbs a month prior when discussing the R.S. case with Ms. Mobbs. Ms. Mobbs also accused Plaintiff of not initiating a safety plan on another case as Ms. Mobbs alleged she had instructed Plaintiff to do.  Plaintiff alleges she denied Ms. Mobbs' accusations and advised Ms. Heist that she had recorded the telephone conversation on her personal cell phone.  She requested to play back the recordings to refute the accusations, but was denied permission. Id., at ¶25.

Plaintiff emailed Michael Kindrick, District Director, with a narrative of the events of the meeting with Ms. Mobbs, Ms. Heist and Ms. Willyard and complained that she was being subjected to disparate treatment.  Subsequently, Plaintiff met with Mr. Kindrick and reviewed the content of the recordings, none of which he had issues with.   However, Kindrick had contacted the Human Resources Division due to his objection to Plaintiff recording conversations. Kindrick allegedly instructed Plaintiff to remove the recording device from her personal phone. Id., at ¶26.

Plaintiff alleges her supervisor, Jeana Heist, instructed her to close the case as soon as possible.  In the processs of doing so, Plaintiff discovered that case notes she entered into the file had been deleted.  Ms. Heist told Plaintiff she

4

was the one who deleted case notes and the notes "just did not belong there." Id., at ¶27.

Plaintiff told Kindrick that her case notes about Jeff Sanders' decision to leave R.S. in the home had been deleted.  Subsequently, Mr. Kindrick informed Plaintiff that Ms. Heist had confirmed to him that she had deleted those notes. Id., at ¶29.

Plaintiff alleges on December 26, 2014, she met with Luke Cooper from OCA to report her concerns regarding the manner in which the case was handled and the deletion of evidence from the investigative file.  Thirty minutes after the conclusion of this meeting, Plaintiff was called into a meeting with Kindrick and Sanders during which she was terminated for not disclosing her prior state employment to DHS on her application. Id., at ¶29

Plaintiff filed a grievance regarding her termination and requested a civil rights investigation.  The Step-Two decision maker, Patrick Klein, upheld the termination. Id., at ¶30.  Klein wrote a letter describing what "they" had found during their investigation.  The letter indicated that Mr. Kindrick spoke with Zane Gray, the Child Welfare Regional Director, prior to Plaintiff's termination and that Mr. Gray approved Plaintiff's termination Id., at ¶31.  The grievance manager, Leanne Saunders, directed Mr. Klein to amend his decision to remove any reference to Mr. Gray's involvement in Plaintiff's termination. Id., at ¶32.  When Plaintiff subsequently applied for unemployment, she received a copy of the application referenced in her termination meeting.   The application DHS

submitted was not the application Plaintiff had submitted to DHS when she applied. Id., at ¶33.   Plaintiff claims that during her "tenure" at DHS, her Caucasian supervisors and co-workers violated policies, committed illegal acts, deleted case files, and even committed perjury and were not disciplined or terminated. Id., at ¶34.   Plaintiff filed with EEOC and received a Right to Sue notice on March 3, 2016. According to Plaintiff, Defendants Kindrick and Gray were aware of Plaintiff's protected speech and jointly decided to terminate her employment so as to suppress that speech. Id., at ¶ 68.

As explained below, Defendant Kindrick submits this action should be dismissed as against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's Complaint fails to state a claim upon which any relief can be granted against him.

## II.  ARGUMENT AND AUTHORITIES

### A.  Standard for motion to dismiss for failure to state a claim.

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court set forth the standards that this Court must use in determining whether dismissal, as DHS has requested, is warranted under Rule 12(b)(6).  The Supreme Court held in accordance with Rule 8, F.R.Civ.P., that a complaint need not contain "heightened fact pleading of specifics," 550 U.S. at 570, or "detailed factual allegations," Id., at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." Id., at 570.

The United States Court of Appeals for the Tenth Circuit has stated that Twombly imposes a "burden ... on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that ... she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at 556. The allegations in the Plaintiff's Complaint must therefore "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief [against this defendant]." Id. (footnote omitted).

The Court's task at this stage is to determine whether "there are well-pleaded factual allegations," Ashcroft V. Iqbal, 556 U.S. 662, 679 (2009), in the challenged pleading, and if so, the "[C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 678 (citations omitted).

In this context, the Plaintiff's Complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008)(quotation and further citation omitted). While "[t]he nature

and specificity of the allegations required to state a plausible claim will vary based on context," Kansas Penn Gaming LLC V. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011)(citations omitted), neither "naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, ... suffice." Id. (citing Twombly, 550 U.S. at 555). "[T]he Twombly standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012).   "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555 (further citation omitted)), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' ...." Kansas Penn Gaming, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 555).   The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v.Twombly, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  Id.  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at

1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  Id.  Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).

The Tenth Circuit further noted in Robbins that in a §1983 action in which the defense of qualified immunity from individual liability has been raised by the defendants, [t]he Twombly standard has greater 'bite'" in evaluating dismissals in qualified immunity cases "reflecting the special interest in resolving affirmative defense of qualified immunity 'at the earliest stage of a litigation.'" Id., 519 F.3d at 1249.  When a qualified immunity defense tests individual capacity claims in a §1983 action by way of a motion to dismiss, the trial court is under an obligation to exercise its discretion in a way that protects the substance of the qualified immunity defense.  Id.  The trial court should insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible.  Id.  In the context of §1983 claims alleged against defendants asserting qualified immunity, "plausibility" refers to the scope of the allegations in the Complaint; if they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a

9

cause of action" then such allegations may be inadequate to overcome a motion to dismiss for qualified immunity.  Id., at 1247-48.

### B.  Plaintiff's Amended Complaint must be dismissed under Rule 12(b)(6).

Applying this standard to the instant case, it is clear that Plaintiff's Fifth claim of the Complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails to state a claim upon which relief can be granted against Defendant Kindrick for the denial of Plaintiff's First Amendment rights as alleged against him.  In addition, Defendant Kendrick is entitled to qualified immunity from liability in his individual capacity for the Plaintiff's §1983 claim asserted in this case.

### . 1.  Count V fails to state a claim against Defendant Kindrick under 42 U.S.C. §1983 for violation of Plaintiff's First Amendment right to freedom of speech.

In the Fifth claim of her Complaint (Doc. #3), Plaintiff seeks relief against Defendant Kindrick for alleged deprivation of her "constitutional right to the freedom of speech" after Plaintiff made comments regarding the "cover-up of the decision to leave R.S. in an unsafe home." Id. at ¶67.  Looking at Plaintiff's allegations in ¶¶65-76 of her Complaint, Defendant Kindrick urges the Court to dismiss this claim against him, as it fails to sufficiently allege a claim against him upon which relief can be granted.

> "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); see also Pickering v. Bd. Of Educ.,

391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Therefore, "a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." Dill v. City of Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 1998) (citing Connick v. Myers, 461 U.S. 138, 146-47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

Couch v. Board of Trustees of Memorial Hosp. of Carbon County, 587 F.3d 1223

(10th Cir. 2009).  In Couch, the Tenth Circuit said when analyzing a free speech

claim based on retaliation by an employer, it applies the five-prong

Garcetti/Pickering test:

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employees' interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.  Brammer-Hoelter, 492 F.3d at 1202-03 (internal quotations and alterations omitted).

Id., at 1235.  Also see, Poff v. State of Okla., ex rel. Okla. Dept. of Mental Health

and Substance Abuse Services, #CIV-14-1438-C (W.D.Okla.)(Cauthron,

J.)("Memorandum Opinion and Order" (Doc. #32) filed Apr. 29, 2015 (copy

11

attached as Exhibit 1 hereto)). ("If the speech is consistent with the type of activities the employee was paid to do, it is made within the scope of employment," citing <u>Green v. Bd. of Cnty. Comm'rs</u>, 472 F.3d 794, 801 (10th Cir. 2007)).

In the instant case, Plaintiff's job was as a Child Welfare Specialist.  At the time of her discharge, Plaintiff had worked for the defendant DHS approximately six months. (Complaint, Doc. #3, at ¶¶10, 29) Plaintiff alleges after she was assigned R.S.'s case, and she went and spoke with him, she reported the substance of her conversation with R.S. to the on-call supervisor, Ms. Westdyke, who relayed the information to the district director, Jeff Sanders. <u>Id</u>., at ¶14. Sanders and Westdyke advised Plaintiff to leave R.S. with his parents. The next day, Plaintiff expressed her concerns about the decision to her supervisor, Summer Purdom. <u>Id</u>., at ¶16.   After taking the child to see a doctor, who determined that the child had bruises consistent with being beaten with an open hand, Plaintiff made arrangements for R.S. to be placed in the care of relatives.

Subsequently, Plaintiff informed Defendant Kindrick, a DHS Child Welfare District Director, how she handled the situation with R.S., and expressed to him that it was wrong to leave R.S. in the home and that doing so violated DHS policy. <u>Id</u>., at ¶21.   Later that week, when attending a child welfare multi-disciplinary task force, Plaintiff informed the task force that she had been instructed by Sanders and the on-call supervisor to leave the child in his parents' custody. <u>Id</u>., at ¶22.

Plaintiff later approached Kindrick and informed him that her case notes about Jeff Sanders' decision to leave R.S. in the home had been deleted. Id., at ¶28 On December 26, 2014, Plaintiff met with Luke Cooper of the Office of Client Advocacy to express her concerns regarding the manner the case was handled and the deletion of evidence from the investigative file.  Id., at ¶29.

All of the statements Plaintiff made were made pursuant to her job duties. Discussing issues related to what was in the best interest of the child, and whether or not the on-call supervisor and district director were making good judgments regarding the child were all part of the duties Plaintiff was being paid for as part of her employment.

After that meeting, Plaintiff was called into a meeting with Kindrick and Sanders, where they informed her she was terminated for not disclosing her prior state employment to DHS on her application. Id., Plaintiff alleges Kindrick spoke with Zane Gray prior to Plaintiff's termination and that Gray approved Plaintiff's termination.

In each of the instances Plaintiff describes that she told someone she disagreed with Mr. Sanders' and Westdyke's decision to leave R.S. in his home, Plaintiff was speaking pursuant to her employment.  With two exceptions, each person she told of her disagreement with Sanders and Westdyke was in her chain of command: 1) she spoke to Westdyke who spoke with Jeff Sanders, the district director; 2) she spoke with Summer Purdom, her direct supervisor; 3) she spoke with Michael Kindrick who was the district director; 4) she spoke with her

direct supervisor, Jeana Heist.[1]  Plaintiff expressed to Heist her concern about case notes being deleted, and Heist informed Plaintiff that Heist was the one who deleted them. Plaintiff talked with Sanders and Kindrick who informed her she was terminated.  In addition to speaking to the persons in her chain-of-command, Plaintiff states she told the interdisciplinary task force that she had been instructed by Sanders and Westdyke to leave the child in his parents' custody. She also spoke with Luke Cooper of the DHS Office of Client Advocacy about her concerns.  The communications Plaintiff describes were all made pursuant to her employment.

If the Court finds that Plaintiff was not speaking pursuant to her employment, but was instead speaking as a private citizen, under the second prong of Garcetti/Pickering, the Court must determine whether the Plaintiff was speaking about a personal or a public concern. Defendant submits Plaintiff was speaking to a personal concern.   While the State of Oklahoma's efforts in addressing child abuse and neglect are a matter of public interest, it cannot be said that a Child Welfare Worker's disagreement with a supervisor about the handling of one decision in one child welfare referral is a matter of public concern.   Plaintiff describes her comments about the decision of Sanders and Westdyke to leave R.S. in his home in a way that sounds like her main concern was to fix blame for any undesirable outcome on someone beside her. Child

---

[1] Plaintiff identifies both Purdom and Heist as her direct supervisor, and also identifies Sanders and Kindrick each as the district director.

welfare matters are generally confidential, by law. See, for instance, 10A O.S §
2-6-102.  The decision to leave R.S. in his home was not a matter for public
discussion or consideration. The matter was only known to DHS Child Welfare
workers and managers with reason to know, and two interdisciplinary task-force
workers whose jobs it was to know about the incident.

    If, however, the Court finds that the matter was a matter of public concern,
the Court moves on to the third prong of the Garcetti/Pickering test to determine
if the Plaintiff's interest in commenting on the matter outweighs the state's
interest as the employer.  As mentioned, it appears from Plaintiff's allegations
that she was most concerned with deflecting blame from herself for the fact that
R.S. received a "beating" from his father, after it was decided to leave R.S. in his
home.  The allegations also show that Plaintiff was interested in fixing blame on
the district director and the on-call supervisor. Openly criticizing decisions of
managers and supervisors to others within and outside of DHS has the potential
to be incredibly disruptive to the work environment.   DHS, and Defendant
Kindrick, as the District Director, have the utmost interest in maintaining the
efficiency and safety of its operating system.  In Andersen v. McCotter, 205 F.3d
1214 (10th Cir. 2000) the court found that a state worker who made disparaging
comments regarding the department of corrections where she worked was not
entitled to protection under the First Amendment.  The court held that:

> Given the context of Andersen's speech, the impact of her
> comments on her Bonneville relationships, and the potential
> disruptiveness of her speech, we conclude that the Pickering

balance tips in favor of defendants. Andersen has failed to show that her interest in commenting on proposed changes to the Bonneville sex offender treatment program outweighed defendants' interest in efficiently and safely operating the program.  Accordingly, we hold that Andersen's speech was not protected by the First Amendment. We therefore need not proceed further with the Pickering analysis.

Id., at 1218-1219. (Footnote omitted).

The state's interest as employer in the situation is to accomplish the difficult job of protecting children.  Plaintiff's comments that came after the fact, did not serve to protect children, they simply served to protect Plaintiff.  Given the context of the Plaintiff's comments, and the potential disruptiveness of her speech, she would not advance beyond the third prong of the Garcetti/Pickering test as her interest in commenting on the issue did not outweigh the interest of the state as employer.

If the Court does not find the state's interest as employer outweighed Plaintiff's personal interest, the next two steps in the Garcetti analysis are for the jury to consider and decide.

### 2. The Plaintiff's allegations against Defendant Kindrick are conclusory and insufficient to state a claim.

The Complaint (Doc. #3) contains few allegations regarding Defendant Kindrick directly. The only allegations in the Complaint directed against Defendant Kindrick that appear to relate to a First Amendment claim are that Plaintiff informed Kindrick of how the situation with R.S. was handled, and that it was wrong to leave R.S. in the home, and that doing so violated DHS policy. Id.,

16

at ¶21.   She approached Mr. Kindrick and informed him that her case notes about Jeff Sanders' decision to leave R.S. in the home had been deleted. Id., at ¶28.  Plaintiff's speech regarding the 'cover-up' of the decision to leave R.S. ion an unsafe home constitutes a matter of public concern because it calls attention to DHS's failure to discharge its governmental duties and as a result, is constitutionally protected speech. Id., at ¶67.  And, Defendants Kindrick and Gray were aware of Plaintiff's protected speech and jointly decide to terminate her employment so as to suppress that speech. Id., at ¶68.

Plaintiff's allegations simply do not provide enough information to demonstrate that Plaintiff has a plausible claim against Defendant Kindrick for denial of her first amendment rights. Ridge at Red Hawk, L.L.C. v. Schneider, supra.  Plaintiff pleads no facts showing that Defendant Kindrick was motivated or intended to terminate Plaintiff because of anything she said.

The Plaintiff's allegations regarding Defendant Kindrick don't provide any more than the "unadorned, the defendant unlawfully harmed me" accusation as described by the Court in Iqbal, supra.  The substance of the allegations is that Kindrick approved Plaintiff's discharge, and he was aware that Plaintiff's termination was done to suppress her protected speech.  Plaintiff's allegations are conclusory, and don't provide sufficient relevant information to make Plaintiff's claim plausible on its face.  Her allegations also do not meet the "'burden… on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest' that she is entitled to relief."  Robbins v. Oklahoma, supra

quoting <u>Twombly</u>, 550 U.S. at 556.  Plaintiff's Fifth claim, therefore, should be dismissed for failure to state a claim.

### 3.  Defendant Kindrick is entitled to qualified immunity from liability for any §1983 claim alleged against him in this case.

Based on the allegations set out in the Plaintiff's Complaint, Defendant Kindrick submits that he is entitled to qualified immunity from liability in his individual capacity for Plaintiff's §1983 claims asserted against him in Plaintiff's Fifth claim in this case.  In this connection, when the allegations of a Complaint fail to meet minimal pleading requirements of notice and plausibility, further analysis of qualified immunity and plausibility is not needed and a court may simply grant qualified immunity to the moving defendants and stop there. <u>VanZandt v. Okla. Dept. of Human Services</u>, 2008 WL 1945344 *5 (10th Cir. 2008).  However, assuming <u>*arguendo*</u> for purposes of this Motion that Plaintiff's Complaint in this case <u>*can*</u> be construed to properly allege a viable §1983 claim against Defendant Kindrick, then he is nonetheless entitled to qualified immunity from personal liability in his "individual" capacity for any such claim asserted by Plaintiff.

In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), the United States Supreme Court held that the doctrine of qualified immunity is designed to protect government officials from actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. at 818.  The objective test adopted in <u>Harlow</u> to

determine whether qualified immunity applies was intended to shield public officials from undue interference in the performance of their duties and to permit the defeat of insubstantial claims without the cost and disruption attendant to trial.  Powell v. Mikulecky, 891 F.2d 1454, 1556 (10th Cir. 1989); see Robbins v. State of Oklahoma, ex rel. Dept. of Human Services, supra, 519 F.3d at 1248 (10th Cir. 2008) (Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" (quoting Anderson v. Creighton, 483 U.S. 635, 646, n. 6 (1987)).  As a result, qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting Harlow v. Fitzgerald, supra, 457 U.S. at 818); see Malley v. Briggs, 475 U.S. 335, 341 (1986) (Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law.").

In order to determine whether a defendant is entitled to qualified immunity, a court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct.  See Saucier v. Katz, 533 U.S. 194, 201-203 (2001); see generally Pearson v. Callahan, 555 U.S. 223 (2009).  When a defendant raises the qualified immunity defense, "the plaintiff bears a heavy burden."  Hannula v. City of Lakewood, 907

F.2d 129, 130 (10th Cir. 1991). It is the plaintiff's burden to convince the court that the law at the time of defendant's actions was clearly established. Hilliard v. City and County of Denver, 930 F.2d 1516, 1518 (10th Cir. 1991); Pueblo Neighborhood Health Centers, Inc., v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988); Lutz v. Weld County School Dist. No. 6, 784 F.2d 340, 342-43 (10th Cir. 1986). However, if there is no constitutional or statutory violation, the court need not inquire if the law was clearly established. See Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995).

The United States Supreme Court's decision in Harlow v. Fitzgerald raises a presumption in favor of immunity for public officials acting in their individual capacities. Hidahl v. Gilpin County Dept. of Social Services, 938 F.2d 1150, 1155 (10th Cir. 1991); Schalk v. Gallemore, 906 F.2d 491, 499 (10th Cir. 1990). The courts have held in this regard that there is a "strong presumption" that qualified immunity will apply and that state actors have properly discharged their official duties and to overcome that presumption the plaintiff must present specific allegations and clear evidence to the contrary. See Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000); see also Hidahl v. Gilpin County Dept. of Social Services, supra, 938 F.2d at 1155. The United States Supreme Court has explained that immunity may be denied only "if, on an objective basis, it is *obvious* that *no reasonably competent officer* would have concluded" that the conduct was lawful at the time the defendant acted. Malley v. Briggs, supra, 475 U.S. at 341 (emphasis added).

20

In the instant case, even if Plaintiff's plausible allegations against Defendant Kindrick are taken as true, they simply do not rise to the level of a constitutional violation.  At most, the action of this Defendant was simply a mistaken judgment by him.  However, the qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. at 341).

For the reasons argued above in Defendant's Propositions 1 and 2, Plaintiff's allegations are insufficient to show Defendant Kindrick has violated Plaintiff's well-established constitutional rights.   Plaintiff has not set forth sufficient facts to show that she has a colorable claim that Kindrick violated her First Amendment Right to speak as a citizen on a matter of public interest.

When the foregoing standard is applied to the instant case, it is clear that Defendant Kindrick is entitled to qualified immunity from personal liability in his individual capacity for the Plaintiff's §1983 claims alleged against him in the Fifth claim of the Complaint and that the Plaintiff cannot meet her burden required to overcome Defendant Kindrick's qualified immunity defense.

## CONCLUSION

Defendant Kindrick urges the Court to dismiss all of Plaintiff's claims asserted against him in Plaintiff's Complaint.  The factual allegations in support of the Fifth claim do not sufficiently allege that Kindrick acted under color of state law so as to deprive Plaintiff of her protected First Amendment interests.

Under the <u>Garcetti/Pickering</u> test, the comments Plaintiff alleges she made were all made as part of her job as a Child Welfare Specialist, or they were comments on matters that were merely of personal concern to her, or though made as a citizen about matters of public concern, the interests of the state as employer outweighed her interest as a private citizen.

Moreover, Plaintiff's Complaint fails to state a plausible claim on its face in regard to Defendant Kindrick, as it doesn't provide enough facts to show Kindrick acted so as to deprive Plaintiff of her protected speech rights.

Finally, Defendant Kindrick is entitled to qualified immunity for personal liability in his individual capacity for Plaintiff's §1983 claims.

Under these circumstances, the Court should grant Defendant Kindrick's Motion to Dismiss and dismiss the Plaintiff's action against him in its entirety.

Respectfully submitted,

*s/John E. Douglas*
John E. Douglas (OBA #2447)
Stacy Pedersen (OBA #17118)
Emily Fagan (OBA #22427)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352

Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816

E-mail:  John.Douglas@okdhs.org
E-mail:  Stacy.Pederson@okdhs.org
E-mail:  Emily.Fagan@okdhs.org

*Attorneys for Defendant Michael Kindrick.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 30th day of June, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Charles C. Vaught
ARMSTRONG & VAUGHT, PLC
2727 E. 21st Street, Ste. 505
Tulsa, OK 74114
*Attorney for Plaintiff*

<u>s/ John E. Douglas</u>
John E. Douglas