**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ISHANTA SHOALS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CV-220-RAW |
| | ) | |
| THE STATE OF OKLAHOMA, ex rel. | ) | |
| OKLAHOMA DEPARTMENT OF HUMAN | ) | |
| SERVICES, | ) | |
| MICHAEL KINDRICK, an individual, | ) | |
| and, | ) | |
| ZANE GRAY, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES'**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR**
<u>**FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**</u>

Respectfully submitted,

<u>*s/John E. Douglas*</u>
John E. Douglas (OBA #2447)
Stacy Pedersen (OBA #17118)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352

Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816

E-mail:  John.Douglas@okdhs.org
E-mail:  Stacy.Pederson@okdhs.org
*Attorneys for Defendant Oklahoma*
*Department of Human Services.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES  ................................................................................. ii

DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES'
   MOTION TO DISMISS FIRST AMENDED COMPLAINT
   FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT  .......... 1

BRIEF IN SUPPORT OF MOTION TO DISMISS

   I. STATEMENT OF FACTS  .................................................................... 2

   II. ARGUMENT AND AUTHORITIES  ..................................................... 7

      A. Standard for motion to dismiss for failure
        to state a claim.  ........................................................................... 7

      B. Plaintiff's First Amended Complaint must be dismissed
        under Rules 12(b)(6).  ................................................................. 7

      1. Plaintiff's First Amended Complaint fails to state a
        claim for race discrimination under Title VII
        or under 42 U.S.C. §1981  ......................................................... 10

      2. Plaintiff fails to state a claim for retaliation under
        Title VII or under 42 U.S.C. § 1981.  ........................................ 14

   III. CONCLUSION  .................................................................................. 16

CERTIFICATE OF SERVICE  ......................................................................... 17

## TABLE OF AUTHORITIES

## CASES

**Page**

Ashcroft V. Iqbal, 556 U.S. 662, 679 (2009)  ............................................  8, 9, 10

Bell Atlantic Corp. v. Twombly, 550  U.S.  544 (2007)  ........................  7, 8, 9, 11

Bishop v. U.S., ex rel. Holder,
     Case No. 04-CV-848-TCK-TLW (N.D. Okla.)  .................................  1

Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008)  ..............................  8

Khalik v. United Air Lines,
     671 F.3d 1188, 1193 (10th Cir. 2012)  .......................................  9, 11, 13, 16

Kansas Penn Gaming LLC V. Collins,
     930 F.2d 1516, 1518 (10th Cir. 1991)  ...........................................  9

Lewis v. Standard Motor Products, Inc, 203 F. Supp.2d 1228  ........................  10

McDonnell Douglas v. Green,
     411 U.SA. 792, 93 S Ct. 1817, 36 L.Ed.2d 668 (1973)  ..........................  15

Ridge at Red Hawk, L.L.C. v. Schneider,
     493 F.3d 1174, 1177 (10th Cir., 2007)  .................................................  9, 10

Robbins v. State of Oklahoma, ex rel. Dept. of Human Services,
     519 F.3d 1242 (10th Cir. 2008)  .........................................................  8, 16

Tal v. Hogan, 453 F.3d 1244,1265. n. 24 (10th Cir. 2006)  ....................................  12

Thomas v. Berry Plastics Corporation, 803 F.3d 510 (10th Cir. 2015)  ......  14, 15

## **FEDERAL STATUTES**

Rule 8, Federal Rules of Civil Procedure, 28 U.S.C. ......................................... 7

Rule 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C. ..............   1, 7, 10, 11

42 U.S.C. §1981 ...........................................................  2, 10, 14, 15

42 U.S.C. §1983 .................................................................. 2, 10

## **OKLAHOMA STATUTES**

74 O.S. § 840-4.2(A)(1) ........................................................  12

74 O.S. § 840-4.2(A)(2) ........................................................  12

74 O.S. §840-4.13(D) .......................................................  12, 13

74 O.S. § 840-6.5 ..............................................................  12

## **OTHER AUTHORITY**

OAC 260:25-11-32 .............................................................  12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

ISHANTA SHOALS,                          )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )        Case No. 16-CV-220-RAW
                                         )
THE STATE OF OKLAHOMA, ex rel.           )
OKLAHOMA DEPARTMENT OF HUMAN             )
SERVICES,                                )
MICHAEL KINDRICK, an individual,         )
and,                                     )
ZANE GRAY, an individual,                )
                                         )
                    Defendants.          )

**DEFENDANT OKLAHOMA DEPARTMENT OF HUMAN SERVICES'
MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR
<u>FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT</u>**

Comes now the Defendant, Oklahoma Department of Human Services ("DHS")[1], through its undersigned attorneys, and respectfully moves the Court to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the First Amended Complaint (Doc. #32) in this case fails to state a claim upon which any relief can be granted against her.

---

[1] DHS is incorrectly named as a party defendant in the caption of the Plaintiffs' First Amended Complaint (Doc. #32) as "The State of Oklahoma, ex rel. the Oklahoma Department of Human Services." <u>See</u> <u>Bishop v. U.S., ex rel. Holder</u>, Case No. 04-CV-848-TCK-TLW (N.D. Okla.)("Opinion and Order" (Doc. #148) filed Nov. 24, 2009, at 7 (in which Judge Kern noted that "[u]nder Tenth Circuit and Oklahoma law, the *'ex rel.'* designation has no significance when used in relation to a defendant, and parties on both sides of the *'ex rel.'* designation are treated as named defendants.).

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.  STATEMENT OF FACTS

In her First Amended Complaint (Doc. #32), Plaintiff Ishanta Shoals ("Shoals") has asserted four claims against the Oklahoma Department of Human Services ("DHS"): race discrimination pursuant to Title VII; race discrimination pursuant to 42 U.S.C. § 1981; retaliation for reporting race discrimination pursuant to Title VII, and retaliation for reporting race discrimination pursuant to 42 U.S.C. § 1981.  Plaintiff also made a claim against two DHS employees, Zane Gray, Regional Director of Child Welfare, and Michael Kindrick, District Director for Child Welfare, pursuant to 42 U.S.C. § 1983, alleging violation of Plaintiff's right of free speech under the First Amendment.  (A separate Motion to Dismiss will be filed on behalf of the individual Defendants).  Plaintiff brings all of her claims in connection to her past employment at DHS.  In this Motion to Dismiss, Defendant DHS seeks dismissal of all four claims against it.  Defendant DHS asserts Plaintiff fails to adequately allege each of the four claims.

For each of her four claims against Defendant DHS, Plaintiff seeks relief in the form of: (1) a declaration that Defendant's conduct violated Plaintiff's rights; (2) an injunction against Defendant engaging in such conduct in the future; (3) a judgment for Plaintiff in excess of $100,000 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) an order reinstating Plaintiff to her former position, or front pay in lieu of same; and, (5) other and further relief as is just, proper, and equitable.

Plaintiff alleges she became employed with the Oklahoma Department of Human Services ("DHS") on June 4, 2014, and began working on July 11, 2014, as a Child Welfare Specialist.  First Amended Complaint, (Doc. #32) at ¶10.  In October 2014, Plaintiff was assigned a case regarding a 5 year old child, R.S., who had arrived at school with a black eye and advised his teachers that his father caused the injury.  Id., at ¶11.  Plaintiff interviewed the parents and R.S. at the residence in Warner, Oklahoma.  R.S. described that he had been hit by his father after breaking a plate.  R.S. informed Plaintiff that he was afraid of his father and feared that he would be physically assaulted for accusing his father and telling the truth.  Id., at ¶13.  Plaintiff contacted the on-call supervisor, who relayed the information to the District Director, Jeff Sanders.  Id., at ¶14.  Sanders and the supervisor decided there was not a safety concern and instructed Plaintiff to leave R.S. with the parents in the residence.  Id., at ¶15.  The next day, Plaintiff reiterated her concerns for the safety of the child to her supervisor, Summer Purdom.  Id., at ¶16.  Purdom instructed Plaintiff to return to the residence and obtain permission to have R.S. examined by a physician.  Id., at ¶17.  Upon arrival at the residence, R.S. advised Plaintiff that his father had beaten him, hitting him over and over again on his back, for talking to Plaintiff the previous evening.  Id., at ¶ 18.  R.S. was examined by a doctor, who found that R.S. had bruises consistent with being beaten with an open hand.  Id., at ¶19.  Plaintiff told Ms. Purdom of the doctor's findings.  Ms. Purdom advised Plaintiff to create an out-of-home safety plan for the child.  Plaintiff then advised Defendant

Kindrick of how the situation with R.S. was handled, that it was wrong to leave R.S. in the home and that doing so violated DHS policy.

Later that week, Plaintiff attended a multi-discipline task force meeting regarding R.S.  According to Plaintiff, members of the task force were angry that DHS had not removed R.S. on Plaintiff's initial contact.  Id., at ¶22.  Plaintiff's supervisor informed Plaintiff the following week that the matter was being investigated by the DHS Office of Inspector General, Office of Client Advocacy and the Oklahoma Commission on Children and Youth.  Id., at ¶23.

Plaintiff alleges that on December 16, 2014, Plaintiff was called into a meeting with two CPS supervisors, and Mr. Kindrick's administrative assistant, and accused of speaking rudely on the telephone to Ms. Mobbs a month prior when discussing the R.S. case with Ms. Mobbs.  Ms. Mobbs also accused Plaintiff of not initiating a safety plan on another case as Ms. Mobbs alleged she had instructed Plaintiff to do.  Plaintiff alleges she denied Ms. Mobbs' accusations and advised Ms. Heist that she had recorded the telephone conversation on her personal cell phone.  She requested to play back the recordings to refute the accusations, but was denied permission.  Id., at ¶25.

Plaintiff emailed Michael Kindrick, District Director, with a narrative of the events of the meeting with Ms. Mobbs, Ms. Heist and Ms. Willyard and complained that she was being subjected to disparate treatment.  Subsequently, Plaintiff met with Mr. Kindrick and reviewed the content of the recordings, none of which he had issues with.  However, Kindrick had contacted the Human

4

Resources Division due to his objection to Plaintiff recording conversations. Kindrick allegedly instructed Plaintiff to remove the recording device from her personal phone. Id., at ¶26.

Plaintiff alleges her supervisor, Jeana Heist, instructed her to close the case as soon as possible. In the process of doing so, Plaintiff discovered that case notes she entered into the file had been deleted. Ms. Heist told Plaintiff she was the one who deleted case notes and the notes "just did not belong there." Id., at ¶27.

Plaintiff told Kindrick that her case notes about Jeff Sanders' decision to leave R.S. in the home had been deleted. Subsequently, Mr. Kindrick informed Plaintiff that Ms. Heist had confirmed to him that she had deleted those notes. Id., at ¶29.

Plaintiff alleges on December 26, 2014, she met with Luke Cooper from OCA to report her concerns regarding the manner in which the case was handled and the deletion of evidence from the investigative file. Thirty minutes after the conclusion of this meeting, Plaintiff was called into a meeting with Kindrick and Sanders during which she was terminated for not disclosing her prior state employment to DHS on her application. Id., at ¶29.

Plaintiff filed a grievance regarding her termination and requested a civil rights investigation. The Step-Two decision maker, Patrick Klein, upheld the termination. Id., at ¶30. Klein wrote a letter describing what "they" had found during their investigation. The letter indicated that Mr. Kindrick spoke with Zane

Gray, the Child Welfare Regional Director, prior to Plaintiff's termination and that Mr. Gray approved Plaintiff's termination. Id., at ¶31. The grievance manager, Leanne Saunders, directed Mr. Klein to amend his decision to remove any reference to Mr. Gray's involvement in Plaintiff's termination. Id., at ¶32. When Plaintiff subsequently applied for unemployment, she received a copy of the application referenced in her termination meeting. The application DHS submitted was not the application Plaintiff had submitted to DHS when she applied. Id., at ¶33. Plaintiff claims that during her "tenure"[2] at DHS, her Caucasian supervisors and co-workers violated policies, committed illegal acts, deleted case files, and even committed perjury and were not disciplined or terminated. Id., at ¶34. Plaintiff alleges during the time she was employed at DHS, seven employees, in a total of eight incidents, violated various provisions of DHS policy, but who were not disciplined in any way, or discharged. Id.

At the time of her discharge, Plaintiff was informed she was being terminated for failing to disclose her previous employment with the State of Oklahoma. Plaintiff alleges this resulted in disparate treatment because, while other workers engaged in more serious misconduct than she, Plaintiff, as the only African-American child welfare specialist in Muskogee County, was the only one terminated. Id., at ¶35.

---

[2] According to Plaintiff's allegations, she worked at DHS from July 11th, 2014, through December 16, 2014.

Plaintiff reported the fact she was being subjected to disparate treatment on the basis of her race to Mr. Kindrick and used the examples set out in ¶34 of the First Amended Complaint (Doc. # 32) to emphasize her beliefs.

Plaintiff filed with EEOC and received a Right to Sue notice on March 3, 2016.  According to Plaintiff, Defendants Kindrick and Gray were aware of Plaintiff's protected speech and jointly decided to terminate her employment so as to suppress that speech.  Id., at ¶ 70.

As explained below, Defendant DHS submits this action should be dismissed against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's First Amended Complaint fails to state a claim upon which any relief can be granted against it.

## II.  ARGUMENT AND AUTHORITIES

### A.  Standard for motion to dismiss for failure to state a claim.

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court set forth the standards that this Court must use in determining whether dismissal, as DHS has requested, is warranted under Rule 12(b)(6).  The Supreme Court held in accordance with Rule 8, F.R.Civ.P., that a complaint need not contain "heightened fact pleading of specifics," 550 U.S. at 570, or "detailed factual allegations," Id., at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." Id., at 570.

The United States Court of Appeals for the Tenth Circuit has stated that Twombly imposes a "burden ... on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that ... she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 556). The allegations in the Plaintiff's First Amended Complaint must therefore "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief [against this defendant]." Id. (footnote omitted).

The Court's task at this stage is to determine whether "there are well-pleaded factual allegations," Ashcroft V. Iqbal, 556 U.S. 662, 679 (2009), in the challenged pleading, and if so, the "[C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 678 (citations omitted).

In this context, the Plaintiff's First Amended Complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Bryson v. Gonzales, 534

F.3d 1282, 1286 (10th Cir. 2008)(quotation and further citation omitted).  While "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," Kansas Penn Gaming LLC V. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011)(citations omitted), neither "naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, ... suffice." Id. (citing Twombly, 550 U.S. at 555).  "[T]he Twombly standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012).  "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555 (further citation omitted)), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' ...." Kansas Penn Gaming, 656 F.3d at 1214 (quoting Twombly, 550 U.S. at 555).  The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v.Twombly, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  Id.  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff

has a reasonable likelihood of mustering factual support for these claims.  <u>Ridge at Red Hawk</u>, 493 F.3d at 1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  <u>Id</u>.  Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S.662, 664 (2009).

### B. Plaintiff's First Amended Complaint must be dismissed under Rule 12(b)(6).

Applying this standard to the instant case, it is clear that Plaintiff's First through Fourth claims of the First Amended Complaint (Doc. #32) are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because they fail to state a claim upon which relief can be granted against Defendant DHS for discrimination or retaliation as alleged against it.

### 1. Plaintiff's First Amended Complaint fails to state a claim for race discrimination under Title VII or under 42 U.S.C. §1981.

Plaintiff's First Amended Complaint (#32) fails to state a claim for race discrimination pursuant to Title VII or to 42 U.S.C. § 1983.  In her First claim, (Doc #32, ¶¶41-47), Plaintiff alleges she was discriminated against in violation of Title VII, and in her Second claim, <u>Id</u>., ¶¶48-54, she alleges she was discriminated against in violation of 42 U.S.C. § 1981.  The standard for stating a claim under Title VII and under § 1983 are the same.  <u>Lewis v. Standard Motor Products, Inc</u>, 203 F. Supp.2d 1228, 1232**.**  The allegations of Plaintiff's First

Amended Complaint consist mainly of her claims that the on-call supervisor and the District Director, Jeff Sanders, didn't believe R.S., a minor child, should have been left in his home with his parents, and, Plaintiff told District Director Michael Kindrick that it was wrong to leave the child in the home, and that doing so violated DHS policy.

To withstand a Rule 12 (b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' Khalik v. United Air Lines, supra, quoting Twombly, 550 U.'S. at 570. In the "Operative Facts" section of her First Amended Complaint (Doc. #32), the only references Plaintiff makes to race discrimination are in ¶¶26, 30, 34, and 36. In ¶26, Plaintiff alleges:

> Plaintiff emailed Michael Kindrik, District Director, with a narrative of the events of the meeting with Ms. Mobbs, Ms. Heist and Ms. Willyard and *complained that she was being subjected to disparate treatme*nt. Subsequently, Plaintiff met with Mr. Kindrick and he reviewed the content of the recordings, none of which he had issues with. However, he had contacted the Human Resources Department with regard to having an issue with Plaintiff recording conversations. He instructed Plaintiff to remove the recording device from her personal phone. (Emphasis added).

Her other references to being discriminated against in the Operative Facts section of her First Amended Complaint are, in ¶¶30, 34 (a-g), and 36. In ¶30, she alleges: [After her termination], "Plaintiff appealed the termination by filing a grievance and requested a civil rights investigation." In ¶34, Plaintiff also adds more detail than she did in her original Complaint in regard to her claim that she was treated differently because she is an African-American. Plaintiff alleges

11

eight individuals violated DHS policy in various ways, but alleges they were not fired by DHS as she was.  Although Plaintiff added these allegations to her First Amended Complaint to satisfy the pleading requirements to provide sufficient factual information to make a plausible claim, Plaintiff still doesn't plausibly show she was treated differently than those named in the eight sub-paragraphs. Plaintiff's allegations in ¶34 are particularly implausible where she claims she became aware of all the alleged misconduct of other workers in the six months she worked at DHS.  Plaintiff does not describe how she came to know of the "facts" she asserts in this regard.  All of the events which Plaintiff alleges in ¶34 of her First Amended Complaint (Doc. #32) occurred between the start of her employment, June 4, 2014, and December 26, 2014.

Defendant DHS urges the Court to take judicial notice of the fact that Plaintiff was at all times referred to in the First Amended Complaint a *probationary* employee.[3]   Plaintiff does not allege the status (whether probationary or permanent) of the other employees she names.  Probationary

---

[3] This Court may properly take judicial notice of facts which are a matter of public record without converting the instant motion to dismiss to a motion for summary judgment. Tal v. Hogan, 453 F.3d 1244,1265. n. 24 (10th Cir. 2006).  Plaintiff alleges in ¶ 10 of the First Amended Complaint (Doc. #32) she became employed with DHS on June 4, 2014. Plaintiff asserts in ¶29 of the First Amended Complaint she was discharged from DHS on December 26, 2014. According to 74 O.S. § 840-4.2(A)(2), an employee who has been continuously employed by the agency for less than twelve (12) months on the date the employee is made subject to the provisions of the Merit System shall be given *probationary* status in the classified service. 74 O.S. § 840-6.5.  Employees who are in classified positions for a year become permanent employees. 74 O.S. §840-4.2(A)(1). Permanent classified employees may only be terminated for cause and pursuant to statutory procedure. 74 O.S. §840-6.5. Probationary employees may be discharged at any time during the probationary period, without right of appeal. 74 O.S. 840-4.13(D); OAC 260:25-11-32

employees may be discharged at any time during the probationary period, without right of appeal. 74 O.S. 840-4.13(D); OAC 260:25-11-32.

Significantly, there is no showing by Plaintiff that the misconduct she attributes to the persons she names in ¶34 is as serious a violation of policy as is Plaintiff's misrepresentation of facts on her employment application.   Plaintiff asserts in her First Amended Complaint that the other workers she names engaged in more serious misconduct than Plaintiff. But, Defendant would disagree.  Plaintiff's misconduct involved dishonesty.  Plaintiff claims only one of the other workers she names in ¶34 committed a dishonest act.

In ¶36, Plaintiff alleges "Plaintiff believes that she was discriminated against on the basis of her race, to wit, African American…." This allegation is clearly conclusory also.

All of these allegations by Plaintiff are conclusory, without sufficient supporting fact to show that her claims are particularly plausible. Khalik, supra at 1191. Regarding her allegation in ¶26 claiming she emailed Michael Kindrick and complained she was being subjected to disparate treatment, Plaintiff does not specify how she was treated differently; does not specify who was treated differently than she; and, does not describe the situation the workers were in who were treated differently than she.  In regard to her ¶30, while Plaintiff states she appealed the termination by filing a grievance and requested a civil rights investigation, Plaintiff doesn't tell us any reason for her to believe a civil rights investigation was necessary.  (She also apparently filed her grievance after she

was terminated, so her grievance and included request for an investigation could not have been a cause of discrimination or retaliation).

.  Plaintiff fails to satisfy the pleading standards demanded by the case law set forth in section (II) A) of this brief.

### 2. Plaintiff fails to state a claim for retaliation under Title VII or under 42 U.S.C. § 1981.

Similar to her failure to set forth a claim for discrimination under Title VII or under 42 U.S.C. § 1981, Plaintiff's First Amended Complaint (Doc. #32) fails to set forth a plausible claim for retaliation.  As with her discrimination claims, the same standards for stating her retaliation claims apply to her Title VII claim and her 42 U.S.C. § 1981 claim.  Thomas v. Berry Plastics Corporation, 803 F.3d 510 (10th Cir. 2015).

In ¶24 of her First Amended Complaint, Plaintiff describes being called into a meeting with Jeana Heist, CPS supervisor; Linda Mobbs, CPS supervisor; and Tammy Willyard, Kindrick's administrative assistant; and being accused of speaking rudely on the telephone to Ms. Mobbs when discussing the R.S. case. In ¶26, Plaintiff alleges she emailed Michael Kindrick with a narrative of the events of the meeting with Ms. Mobbs, Ms. Heist, and Ms. Willyard and "complained that she was being subjected to disparate treatment."  Reviewing the same additional paragraphs of the First Amended Complaint as discussed in Proposition No. 1, specifically ¶¶30, 34, 36, Plaintiff does not allege how she was

14

discriminated against, or how she was retaliated against.  The allegations of ¶30 occurred *after* she was terminated.

 In ¶28, Plaintiff alleges she felt like she was being set up as the scapegoat for DHS' handling of the R.S. situation.  She approached Kindrick and informed him that her case notes about Jeff Sanders decision to leave R.S. in the home had been deleted.  In ¶29, Plaintiff alleges Mr. Kindrick and Jeff Sanders told her she was terminated for not disclosing her prior state employment to DHS on her application.  These allegations fall short of stating facts showing Plaintiff has a plausible claim for retaliation.

In her First Amended Complaint, Plaintiff pleads her Fourth claim for retaliation in violation of 42 U.S.C. § 1981 in ¶¶61 – 66.  In ¶¶61 – 64, Plaintiff does not describe how she was treated disparately from other workers in her unit.  Plaintiff pleads no facts showing she was intentionally discriminated against, nor does she plead any facts showing she was treated differently than other workers in her work place.

In Thomas v. Berry, supra, the Tenth Circuit, in ruling on a motion for summary judgment, said, applying the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S.A. 792, 93 S Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff bears the initial burden of establishing a prima facie case of retaliation by demonstrating that 1) she engaged in a protected activity, 2) she suffered a material adverse action, and 3) there was a causal connection between the protected activity and the adverse action.  While the McDonnell Douglas analysis

15

is for use in analyzing summary judgment motions, Plaintiff has to make some showing in her First Amended Complaint that she can plausibly make a claim that she can establish all three elements.  In this case, Plaintiff fails to satisfy requirement no. 1 as she doesn't show any facts to support her claim she was treated disparately before she complained to Mr. Kindrick that she was the victim of disparate treatment.  She also pleads no facts showing there was a causal connection between the protected activity and the adverse action.

As with her First and Second claims for discrimination, in asserting her Third and Fourth claims for retaliation, Plaintiff fails to comply with the pleading standards as required by the case law discussed in section (II)(A) of this brief.

### III. CONCLUSION

Plaintiff fails to satisfy the pleading standard as described by the Tenth Circuit in Robbins, and Khalik, supra, by framing her First Amended Complaint with enough factual matter taken as true to suggest that she is entitled to relief. She fails to sufficiently plead claims for race discrimination in her First and Second claims, or retaliation in her Third and Fourth Claims for relief, and this Court must dismiss her First Amended Complaint against DHS.

Respectfully submitted,

*s/John E. Douglas*
John E. Douglas (OBA #2447)
Stacy Pedersen (OBA #17118)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352

Telephone:  (405) 521-3638
Facsimile:  (405) 521-6816

E-mail:  John.Douglas@okdhs.org
E-mail:  Stacy.Pederson@okdhs.org
*Attorneys for Defendant Oklahoma
Department of Human Services.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Charles C. Vaught
ARMSTRONG & VAUGHT, PLC
2727 E. 21st Street, Ste. 505
Tulsa, OK 74114
*Attorney for Plaintiff*

*s/ John E. Douglas*
John E. Douglas

17