# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ISHANTA SHOALS,<br><br> Plaintiff,<br><br>v.<br><br>1. STATE OF OKLAHOMA, ex rel., OKLAHOMA DEPARTMENT OF HUMAN SERVICES, a governmental agency,<br>2. MICHAEL KINDRICK, an individual, and,<br>3. ZANE GRAY, an individual,<br><br> Defendants. | Case No. CIV-16-220-RAW |

## ORDER

Plaintiff filed her First Amended Complaint on August 3, 2016, alleging claims of disparate treatment based on her race and retaliation in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981[1] against the Oklahoma Department of Human Services (hereinafter "DHS") and a claim of first amendment retaliation

---

[1] "[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989). See also Hannah v. Cowlishaw, 628 Fed.Appx 629, 632 (10th Cir. 2016) (directing this court to allow the plaintiff to amend his complaint to comply with Jett by pleading a § 1983 claim). As DHS seems to do in its motion to dismiss, the court herein construes Plaintiff's claims against DHS to be pursuant to Title VII and § 1983. Nevertheless, the court also hereby instructs Plaintiff to amend her complaint only inasmuch as necessary to comply with Jett by pleading § 1983 claims no later than December 30, 2016. Otherwise, the court will dismiss those claims. As the complaint will be substantially the same and the court rules on Defendant's motions to dismiss herein, further motions to dismiss will not be considered.

in violation of 42 U.S.C. § 1983 against Michael Kindrick and Zane Gray. Now before the court are the motions to dismiss by DHS [Docket No. 37] and by Mr. Kindrick and Mr. Gray [Docket No. 36].

## STANDARD OF REVIEW

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in Plaintiff's Amended Complaint and construes those facts in the light most favorable to Plaintiff. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive the motions to dismiss, the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must nudge her "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

> [T]he Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and

conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

Burnett v. Mortgage Elec. Registration Sys., Inc., 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)).

In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." Robbins v. Oklahoma, 519 F.3d 1242, 1247, 1248 (10th Cir. 2008) (emphasis in original). Otherwise, the Amended Complaint would fail to provide fair notice and to present a plausible right to relief.

## *CLAIMS AGAINST DHS*[2]

### *Disparate Treatment Claim*

To state a claim for racial discrimination, Plaintiff must allege: (1) that she is a member of a protected class, (2) an adverse employment action, and (3) disparate treatment among similarly situated employees. Carney v. City and Cnty. of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). This standard is the same under both Title VII and § 1983 claims. Id. Taking the allegations in Plaintiff's Amended Complaint as true, Plaintiff appears to be a crusader who fought for the welfare of a child, R.S., and when the system failed him, began a movement to assist other similarly situated children by making sure the employees who made the errors that caused R.S.'s further injuries were dealt with in some way. From the facts alleged, it appears she

---

[2] Plaintiff alleged a disparate treatment claim pursuant to both Title VII and § 1983 and a retaliation claim pursuant to both Title VII and § 1983. The "basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII." Notari v. Denver Water Dept., 971 F.2d 585, 587 (10th Cir. 1992).

was terminated because of her crusade, not because of her race. Alternatively, it appears possible she was terminated because of her frequent reporting on her fellow employees, recording conversations, and/or for the reason given to her at the termination meeting – failure to report her prior employment with the state on her application. The court's speculations on the facts alleged, however, are not dispositive. These are questions of fact to be determined at a later stage.

Plaintiff has sufficiently alleged a claim of racial discrimination. She alleged that she is a member of a protected class. She alleged that she suffered an adverse employment action, namely termination. She alleged several examples of disparate treatment among similarly situated employees. Plaintiff has stated a claim for disparate treatment. DHS's motion is denied.

### *Retaliation Claim*

To state a claim for retaliation, Plaintiff must allege: (1) she engaged in protected opposition to discrimination, (2) the employer took action that a reasonable employee would find materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. Khalik, 671 F.3d at 1193. This standard is the same under both Title VII and § 1983 claims. Eldridge v. Rochester City Sch. Dist., 968 F.Supp.2d 546, 556 (W.D. NY 2013). Plaintiff alleged that she complained of disparate treatment to Mr. Kindrick. Plaintiff alleged that shortly thereafter she was called into a meeting with Mr. Kindrick and Jeff Sanders and informed she was being terminated. She alleged that she was terminated because she complained of disparate treatment. Plaintiff has stated a claim for retaliation. DHS's motion is denied.

*CLAIM AGAINST INDIVIDUAL DEFENDANTS*[3]

*First Amendment Claim*

Plaintiff seeks relief against individual defendants Kindrick and Gray for deprivation of her First Amendment rights. She alleged, *inter alia*, that her "speech regarding the cover-up of the decision to leave R.S. in an unsafe home constitutes a matter of public concern because it calls attention to DHS's failure to discharge its governmental duties and, as a result, is constitutionally protected speech." Docket No. 32, p. 15. The "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern" and that "a public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech." Couch v. Board of Trustees of Memorial Hosp. of Carbon Cnty., 587 F.3d 1223, 1235 (10th Cir. 2009) (citing, *inter alia*, Garcetti v. Ceballos, 547 U.S. 410, 410 (2006) and Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)).

When such a claim is alleged, courts apply the Garcetti/Pickering test, which consists of the following five prongs:

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may

---

[3] In deciding the individual defendants' motion to dismiss the Amended Complaint, the court has also considered the arguments made by the parties in the previous motions, responses and replies, Docket Nos. 12, 16, 22, 23, 25 and 26.

5

>demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Id. (citation omitted). Defendants argue that all of the statements Plaintiff made were made pursuant to her job duties, that she was speaking about a personal concern, that her interests did not outweigh the interest of the state and that her allegations regarding her speech being the motivating factor in her discharge are conclusory. The court does not agree.

Plaintiff alleged that she informed Mr. Kindrick of the fact that R.S. was wrongfully left in a home that was dangerous at the direction of the on-call supervisors. Plaintiff alleged she informed Mr. Kindrick that her case notes about the decision to leave R.S. in the unsafe home were deleted. Plaintiff also alleged that she reported the matter to other state agencies. Plaintiff alleged that shortly thereafter she was called into a meeting with Mr. Kindrick and terminated. Plaintiff alleged that Mr. Kindrick spoke with Mr. Gray prior to terminating Plaintiff, that Mr. Gray was aware of her protected speech and that Mr. Gray approved her termination.

As to the first prong, "[t]he First Amendment protects some expressions related to the speaker's job." Garcetti, 547 U.S. at 421. The Garcetti court noted that it is essential that teachers be able to speak out freely on questions related to the operation of schools without fear of retaliatory dismissal and that "[t]he same is true of many other categories of public employees." Id. The controlling factor in Garcetti was that the plaintiff was fulfilling a job duty with his speech. It is unlikely that Plaintiff had a duty to report the fact of the decision to leave R.S. in an unsafe home and of the deletion of her case notes given that her supervisors already knew of those facts. It is also unlikely her job duties included reporting to other state agencies. In any event, if such reporting were within her job duties, Defendants can produce such evidence and re-urge this in a motion for summary judgment. At this time, taking as true and viewing the

alleged facts in the light most favorable to Plaintiff, the court finds she has satisfied the first prong.

As to the second prong, the welfare of R.S. and other similarly situated children is a matter of public concern. Moreover, the alleged deletion of her case notes is potentially illegal conduct by a government official and inherently a matter of public concern. As to the third prong, Plaintiff's and DHS's interests were not in conflict, at least insofar as they shared the common interest of ensuring the welfare of R.S. and other similarly situated children.[4] With regard to the whistleblowing, in balancing an employee's right to speak against a state employer's interest in efficiency, "an employee's First Amendment interest is entitled to greater weight." Prager v. LaFever, 180 F.3d 1185, 1191 (10th Cir. 1999). Again, taking as true and viewing the alleged facts in the light most favorable to Plaintiff, she has satisfied this prong.

As to the fourth prong, Plaintiff has sufficiently alleged that her speech was a motivating factor in the decision to terminate her. She alleged that both Mr. Kindrick and Mr. Gray were aware of her protected speech and very shortly thereafter made the decision to terminate her. Plaintiff has pled a plausible claim for relief. The motion to dismiss, therefore, is denied.

### *Qualified Immunity*

Defendants argue they are entitled to qualified immunity. "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting Leverington v. City of Colorado Springs, 643 F.3d 719, 732 (10th

---

[4] Defendants argue that Plaintiff was motivated not by the goal of protecting R.S. or similarly situated children, but only to protect herself. It stands to reason Plaintiff would have some motivation to protect herself when her case notes showing it was not her decision to leave R.S. in an unsafe home were deleted. That added motivation does not tip the scale in the state's favor.

Cir. 2011)). Although qualified immunity defenses are generally resolved at the summary judgment stage, a defendant may raise it in a motion to dismiss. Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). At the motion to dismiss stage, the court scrutinizes for objective legal reasonableness "the defendant's conduct as *alleged in the complaint*." Behrens v. Pelletier, 516 U.S. 299, 309 (1996) (emphasis in original).

As the court ruled above, Plaintiff has sufficiently alleged that both Mr. Kindrick and Mr. Gray violated her First Amendment rights; thus she has met her first burden. Next she must show the law is clearly established. "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of the authority from other courts must have found the law to be as the plaintiff maintains." Id. In denying a qualified immunity defense, the Tenth Circuit has admonished that its decisions have "clearly established that an employee's strong interest in disclosing governmental corruption outweighs unsubstantiated assertions of workplace disruption." Prager, 180 F.3d at 1192. Thus, the right at issue was clearly established. The court, therefore, cannot grant qualified immunity at this stage.

*CONCLUSION*

For the reasons stated herein, are the motion to dismiss by DHS [Docket No. 37] is hereby DENIED. The motion to dismiss by Mr. Kindrick and Mr. Gray [Docket No. 36] is hereby DENIED. Additionally, Plaintiff shall amend her complaint only to comply with Jett by pleading § 1983 rather than § 1981 claims against DHS no later than December 30, 2016.

**IT IS SO ORDERED** this 8th day of December, 2016.

Ronald A. White
United States District Judge
Eastern District of Oklahoma